# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**SHARON DENISE THOMAS**                                    **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 2:11CV009-A-S**

**KYOCERA WIRELESS CORP.**                                  **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment [32] filed by Defendant Kyocera Communications Inc. f/k/a Kyocera Wireless Corp. ("Kyocera"). For the following reasons, the Court finds the Motion to be well taken.

## BACKGROUND FACTS

Plaintiff Sharon Denise Thomas commenced this products liability suit in the Circuit Court of Quitman County, Mississippi, alleging negligent design and construction of her Kyocera Xcursion KX160 cellular telephone. The case was timely removed to this Court on the basis of diversity of citizenship. Thomas' Complaint alleges that while speaking on the subject phone, it "malfunctioned, made a 'popping' noise, became hot and began to smoke." Thomas alleges she has suffered permanent hearing impairment from the incident.

In her deposition, Thomas described the phone as "explod[ing]"[1] one evening after she had been speaking on it for five or six minutes. Thomas described the incident as follows:

---

[1]Thomas described the "explosion" as follows:
Q: Tell me what you mean by "exploded?"
A: It was like a boosh.
Q: Did it make a noise?
A: Yes, it did.
Q: Okay. Like what?
A: It was like – it was – just when it exploded, it was like a static sound like that is what it was doing. After I threw it, it was still static and smoking from this area, (indicating).

> And the phone was like boosh. And then when it did that, I threwed [sic] it and my mother ducked. And she said, girl, what's wrong with you, why did you throw that phone? I said, don't you see that phone smoking? It was smoking.

Thomas stated that a few days after the incident, she began experiencing a popping and ringing sound in her ear, and "[t]hen it will shut down on me, my hearing, you know, it will go away. Ten or fifteen minutes, it will come back." Thomas now wears hearing aids in both ears.

Thomas designated Brad Pannell as a liability expert. Pannell's expert report, in its entirety, reads:

> This report is made following review and inspection of the subject telephone, a Kyocera KX160. In addition to the phone itself, a review was made of all photographs taken by representative [sic] of Kyocera during a previous review and inspection of the phone. I was also provided a synopsis of the account of the incident provided by Sharon Denise Thomas.
> It is my opinion that the subject telephone suffered a failure in the handset. The failure occurred in the main flex cable area, due to faulty design and construction or previous damage to the hinge. Due to pressure on the main flex cable, in the area of the flip hinge, the cable became damaged allowing a short which resulted in an audio reaction, excessive heat and burns along the flex cable. The flex cable conducts sound to the speaker.
> There is no indication of any moisture or water damage.

According to Pannell, the alleged malfunction in the subject phone was caused by its hinge. The hinge area contains the "main flex cable" which "connects the upper half of the phone . . . to the lower half." Two circuits within the main flex cable allegedly touched and caused a short, which caused the main flex cable to be burned and severed. Pannell stated that this caused an "audio interruption or popping sound."

Defendant Kyocera has moved for summary judgment, alleging that Thomas cannot prove the essential elements of her products liability action as required by Mississippi Code section 11-1-63. Thomas has failed to respond in opposition, and the time for doing so has expired.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In cases where a plaintiff has failed to respond to a Motion for Summary Judgment, the Fifth Circuit has declared that summary judgment may not be granted solely because of a default, stating

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.

Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995); see also L.U.CIV.R. 7(b)(3)(E). However, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indem. Co., 465 F.3d 156, 164 (5th Cir. 2006).

## DISCUSSION

This action is governed by the Mississippi Products Liability Act, which applies to "any

action for damages caused by a product except for commercial damage to the product itself." MISS. CODE ANN. § 11-1-63. Section 11-1-63 provides, in pertinent part:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>     (i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
>     2. The product was defective because it failed to contain adequate warnings or instructions, or
>     3. The product was designed in a defective manner, or
>     4. The product breached an express warranty or failed to conform to express factual representations upon which the claimant justifiably relied in electing to use the product; and
>     (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>     (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Action brought under section 11-1-63(a) require that the plaintiff "prove (ii), (iii), and at least one of four elements of a claim under (i)." Forbes v. Gen. Motors Corp., 935 So. 2d 869, 873 (Miss. 2006). Here, because this case does not involve a breach of an express warranty or a failure to warn, Thomas must prove by a preponderance of the evidence that the subject phone was defectively manufactured under (a)(i)(1) or defectively designed under (a)(i)(3), in addition to proving that the defective condition rendered the product unreasonably dangerous, and that the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought. In general, claims of a manufacturing or design defect must be supported by expert testimony. Cothren v. Baxter Healthcare Corp., 798 F. Supp. 2d 779, 782 (S.D. Miss. 2011); Hammond v. Coleman Co., Inc., 61 F. Supp. 2d 533, 542 (S.D Miss. 1999), aff'd 209 F.3d 718 (5th Cir. 2010); Childs v. Gen. Motors Corp., 73 F. Supp. 2d 669, 671 (N.D. Miss. 1999). Merely offering evidence that damage occurred after the use of a product is insufficient to establish liability.

Rutledge v. Harley-Davidson Motor Co., 364 F. App'x 103, 107 (5th Cir. 2010) (citing William Cooper & Nephews, Inc. v.Pevey, 317 So. 2d 406, 409 (Miss. 1975)).

I.   Manufacturing Defect

To prove a manufacturing defect, a plaintiff must, *inter alia*, show that a product "deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." MISS. CODE ANN. § 11-1-63(a)(1). Here, Thomas' liability expert, Brad Pannell, testified that he could find no manufacturing defects in the subject phone. Specifically, Pannell stated:

> Q: All right. As we sit here today, do you have any opinions that Ms. Thomas' subject phone was manufactured in any different way than any other Kyocera KX160?
> A: No, I do not have any additional opinion that it was manufactured any differently. No.
> Q: Okay. Any deviations, for example, in this phone compared to all of the other ones coming out of the factory?
> A: Correct, yes.
> Q: So no difference that you were able to note on that?
> A: Nothing that I can note, correct.

The Court finds the Defendant has satisfied its burden under Rule 56 as to this issue, and Thomas has produced no evidence, expert or otherwise, demonstrating a genuine issue of material fact regarding this first element of her manufacturing defect claim. Therefore, summary judgment is appropriate as to this claim.

II.   Design Defect

Regarding any alleged design defect, Kyocera contends that Pannell's opinion is too unreliable to establish a design defect, relying on Kumho Tire Co. v. Carmichael, 137, 154, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Pursuant to Federal Rule of Evidence 702, expert testimony

is admissible when it will assist the trier of fact. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Under the Federal Rules of Evidence, the trial court must ensure that any and all testimony or evidence is not only relevant, but reliable. Daubert, 509 U.S. at 589, 113 S. Ct. 2786. In Daubert, the Supreme Court found that "[t]he primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." Id. Subsequently, in Kumho Tire, the Supreme Court expanded the Daubert "gatekeeping" obligation of the trial court to apply not only to testimony based on "scientific" knowledge, but also "technical" and "other specialized" knowledge. 526 U.S. at 141, 147-48, 119 S. Ct. 1167. The Supreme Court stated that Daubert's list of specific factors neither necessarily nor exclusively apply to every case. Id. at 150–51, 119 S. Ct. 1167. Instead, trial courts enjoy "broad latitude" when deciding how to determine reliability. Id. at 151-53, 119 S. Ct. 1167. The gatekeeping function must be tied to the particular facts of the case. Id. at 149-51, 119 S. Ct. 1167. The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. Moore v. Ashland Chem., Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Here, the Court finds that Pannell's opinion regarding an allegedly defective design is too speculative to be admissible under Rule 702. Pannell's theory, as stated in his expert report, is that

the main flex cable was damaged "due to faulty design and construction *or* previous damage to the hinge." (emphasis added). However, in his deposition, Pannell stated that he could not determine whether the malfunction in the hinge area was due to a defect in the phone or prior consumer damage, stating:

> A: Well, that is what makes it interesting is because being that me seeing the phone post the damage, being broken in half, you know, I can't determine if the hinge was broken prior to or not.
> Q: Okay.
> A: You know, it's — based on what I see, and I would state this every time, I still believe that everything that happened, happened right here in the hinge area. There is almost no question about that. But was the pressure due to malfunction and how it was designed, possible damage? You know, I cannot state that a hundred percent.
> . . .
> Q: Your opinion in this matter is that the damage to the phone could have been a consumer dropping the phone or hurting the phone prior to this incident, correct?
> A: Correct.

When asked to describe with specificity the alleged defect in the design of the phone, Pannell stated:

> A: The possibility of a faulty design would be how the hinge could have been produced, how even at the point the phone was manufactured, it is possible that the flex cable was not properly flowed through the channel that is provided for it. I have seen that on occasions with other manufactures. You know, at production, as it is being put together. Personally me repairing phones, I have damaged flex cables improperly installing them. I catch the lid by accident, because it is so tiny, you can't see it, it binds it, and a couple of days later, the phone is out again.
> Q: Okay.
> A: So you, there is – there is a good possibility that it could have been the way it was produced at the factory, it could have been – the flex could have been installed incorrectly.
> Q: So you are talking not really about how it was designed but how it was manufactured, is that correct?
> A: Yes, sure. I mean, I am sure it is mass produced in a factory somewhere, so there is a possibility that it could have been incorrectly assembled.
> Q: And I appreciate you saying possibility. This is speculation on your part as to what might or could have occurred; is that correct?
> A: What could have occurred?

7

      Q:     Yes.
      A:     Yes.

The Court finds that this testimony regarding the alleged design defect is too speculative and conclusory to be admissible under Rule 702. See Coleman, 61 F. Supp. 2d at 538-39 (excluding testimony of expert as too speculative where expert "offered nothing more than the fact the plaintiff . . . was squirted with fuel and the lantern exploded and perhaps it was caused by three possible malfunctions," never gave an opinion "as to what probably happened," and "never [spoke] in terms of probability, only possibilities"); Farris v. Coleman Co., Inc., 121 F. Supp. 2d 1014, 1018 (N.D. Miss. 2000) (granting summary judgment as to manufacturing defect claim where plaintiff's expert testified that a defect "could have been caused by any number of external factors unrelated to [the product's manufacturing]"). The Court also notes that Pannell has not reviewed the design schematics for the Kyocera KX160 cell phone. Pannell's opinion is based only upon his examination of the phone, photographs of the phone from a previous inspection, and a synopsis of Thomas' account of the incident. He conducted no tests on the phone, did not compare the subject phone to an exemplar phone, or attempt to recreate the incident. In conclusion, the Court finds that Pannell's opinion in regard to whether a design defect existed in the phone is too speculative to be admissible under Rule 702; therefore his testimony is excluded. Because Thomas has failed to offer proof of an essential element of her design defect claim—that the phone was in fact designed in a defective manner—Kyocera is entitled to judgment as a matter of law as to Thomas' design defect claim.

III.     Causation

Alternatively, Kyocera argues that even if Thomas had been able to establish that the phone was defectively manufactured or designed, and the defect caused the phone to "explode," she is

unable to show that the incident proximately caused her alleged hearing loss. Kyocera relies on the testimony of one of Thomas' treating physician, Dr. Pearson Windham. During his deposition, Dr. Windham stated the following:

> Q: And as we sit here today, is that still a true statement, that you are not able to give an opinion to any degree of medical probability as to the cause of Ms. Thomas' hearing loss?
> A: That's correct.
> . . .
> Q: Okay. And in your professional opinion as an ENT, you cannot state . . . to any degree of medical probability that an incident with a cell phone while she was holding it up to her right ear caused her hearing loss as you found it to be when she visited with you; is that correct?
> A: That's correct.

Dr. Windham later stated, in response to questioning from Plaintiff's counsel, that Thomas' symptoms were actually inconsistent with noise-based trauma to the ear, stating:

> Q: She gave – again, she reported the history of the phone popping or exploding and she describes it some two years ago; is that right?
> A: That's correct.
> Q: And she indicated that she had had intermediate episodes of significant decreases in hearing, lasting a couple of hours at a time and then returning to normal?
> A: That's correct.
> . . .
> Q: And if a person had suffered trauma to their ear, would this complaint or this description of complaints be something that – that typically you would see?
> A: Is it all right if I explain my answer?
> Q: Sure.
> A. I would say no. As I talked about earlier, there is a possibility if you had noise-induced trauma to your ear and were treated for it, that it would return to normal. But generally, you would not see repeated bouts of hearing deterioration followed by improvement, hearing deterioration followed by improvement. You wouldn't see that pattern with noise-induced trauma.

No other evidence of causation having been presented, the Court finds that, in the alternative, Kyocera is also entitled to summary judgment because of the lack of evidence demonstrating that her hearing loss was proximately caused by the alleged incident with the cell phone. See Sherwin-

9

Williams Co. v. Gaines, 75 So. 3d 41, 47 (Miss. 2011) ("because the plaintiff's experts did not present any scientific authority that an acute, asymptomatic ingestion of lead could lead to the alleged injuries, the plaintiff did not offer sufficient proof of causation").

## CONCLUSION

Defendant Kyocera has satisfied its burden under Rule 56, and Thomas has failed to come forward with evidence demonstrating a genuine issue of material fact for trial. Therefore, Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's claims are dismissed, and this case is CLOSED.

SO ORDERED on this, the 3rd day of February, 2012.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**